**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BEN-TREI OVERSEAS, L.L.C. d/b/a ) <br> BEN-TREI METALS and ALLOYS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GERDAU AMERISTEEL US, INC. et al., ) <br> ) <br> Defendants. ) | Case No. 09-CV-153-TCK-TLW |

**OPINION AND ORDER**

Before the Court is Defendant Gerdau Ameristeel US Inc.'s ("Ameristeel") Motion to Dismiss (Doc. 23) pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"). Ameristeel argues that dismissal of Plaintiff's claims against it is appropriate based on a forum selection clause in the contract Plaintiff alleges was breached by Ameristeel. Specifically, Ameristeel argues that the language in the forum selection clause mandates that Plaintiff's claims against it be adjudicated in Hillsborough County, Florida.

**I.    Background**

Plaintiff Ben-Trei Overseas, L.L.C. d/b/a Ben-Trei Metals and Alloys ("Ben-Trei") initiated this action on March 17, 2009. Ben-Trei filed an Amended Complaint on April 16, 2009, alleging claims for breach of contract, breach of implied contract, breach of the duty of good faith and fair dealing, and promissory estoppel against Defendants Ameristeel, Gerdau Ameristeel Corporation, and Gerdau Macsteel, Inc.[1]  With regard to Ameristeel, Ben-Trei generally alleges that: (1)

---

[1] Plaintiff later dismissed its claims against Defendant Gerdau Ameristeel Corporation. (*See* Notice of Dismissal, Doc. 25.)

Ameristeel and Ben-Trei entered into a contract for the purchase of certain materials during the third and fourth quarters of 2008; and (2) Ameristeel has only taken delivery of a fraction of the contracted materials, thereby breaching the contract between the parties.

The parties have attached various exhibits to their briefing, which outline the relationship between Ben-Trei and Ameristeel and are relevant in determining the applicability of the forum selection clause cited by Ameristeel. The Court summarizes these exhibits below.

### A.     Request for Quote #1

On November 21, 2006, Ameristeel circulated a Request for Quote ("RFQ") via e-mail to potential suppliers regarding the first half of 2007 ("RFQ #1"). Included in the distribution list for this RFQ was the e-mail address of Ben Thigpen ("Thigpen"), an employee at Ben-Trei. The e-mail reflects three attachments: (1) the RFQ; (2) a document outlining "Ferro Alloys Requirements"; and (3) a document entitled "Gerdau Ameristeel Terms and Conditions clean final-30-Oct-2006.doc" ("Purchase Order Conditions") (collectively "Attached Documents"). The attached RFQ states that "Purchases will be subject to the Gerdau Ameristeel purchase conditions. **(Attached)**." (11/21/06 RFQ, Ex. 2 to Reply in Support of Mot. to Dismiss at 2.) Included in the Purchase Order Conditions is the following statement: "Venue shall be in Hillsborough County Courts, Florida; said courts to have jurisdiction over the parties" ("Forum Selection Clause"). (11/21/06 RFQ, Ex. 2 to Reply in Support of Mot. to Dismiss at 5.) The document also states that "[t]he terms and conditions provided herein and the rights of all parties hereunder shall be construed under and governed by the laws of the State of Florida." (*Id.*)

Thereafter, on December 13, 2006, Thigpen responded to RFQ #1, providing a quote on behalf of Ben-Trei. (12/13/06 E-mail, Ex. 3 to Reply in Support of Mot. to Dismiss.) Thigpen's e-

2

mail makes no mention of the Purchase Order Conditions that were attached to RFQ #1. Bill Dickerson ("Dickerson") of Ameristeel responded to Thigpen's e-mail on December 18, 2006, informing Thigpen that Ben-Trei had been selected as a supplier for Ameristeel for the first half of 2007. (12/18/06 E-mail, Ex. 4 to Reply in Support of Mot. to Dismiss.) Thigpen thereafter responded, confirming the details of the offer. (*Id.*)

### B. Request for Quote #2

On May 30, 2007, Ameristeel sent an RFQ via e-mail to potential suppliers regarding the second half of 2007 ("RFQ #2"), which also included the Attached Documents. Again, Thigpen was on the distribution list for the e-mail. RFQ #2 once again stated that "Purchases will be subject to the Gerdau Ameristeel purchase conditions. **(Attached)**." (5/20/07 RFQ, Ex. 5 to Reply in Support of Mot. to Dismiss at 2.) Thigpen responded to RFQ #2 on June 5, 2007, but was informed by Ameristeel on June 14, 2007 that Ben-Trei's offers were not "competitive." The correspondence between the parties does not mention the Purchase Order Conditions or the Forum Selection Clause.

### C. Request for Quote #3

Ameristeel e-mailed another RFQ to Thigpen on September 4, 2007 with regards to the fourth quarter of 2007 ("RFQ #3"). As with the e-mails regarding RFQ #1 and RFQ #2, this e-mail included the Attached Documents and RFQ #3 again stated that "Purchases will be subject to the Gerdau Ameristeel purchase conditions. **(Attached)**." (9/4/07 RFQ, Ex. 8 to Reply in Support of Mot. to Dismiss at 2.) Thigpen thereafter submitted an initial and revised bid on behalf of Ben-Trei. (*See* 9/10/07 E-mail, Ex. 9 to Reply in Support of Mot. to Dismiss; 9/13/07 E-mail, Ex. 10 to Reply

in Support of Mot. to Dismiss.)  Neither e-mail makes any mention of the Forum Selection Clause or the Purchase Order Conditions.[2]

### D. Request for Quote #4

On November 26, 2007, Ameristeel e-mailed an RFQ for materials for the first quarter of 2008 ("RFQ #4"), including the Attached Documents and stating that "Purchases will be subject to the Gerdau Ameristeel purchase conditions. **(Attached)**."  (11/26/07 RFQ, Exs. 1 & 2 to Mot. to Dismiss.)  Thigpen was again on the distribution list, although the record does not reflect that Thigpen responded to RFQ #4.

### E. Request for Quote #5

On February 26, 2008, Ameristeel e-mailed an RFQ for the second and third quarters of 2008 ("RFQ #5") and included Thigpen on the distribution list.  RFQ #5 again stated that "Purchases will be subject to the Gerdau Ameristeel purchase conditions. **(Attached)**."  (2/26/08 RFQ, Ex. 11 to Reply in Support of Mot. to Dismiss.)  However, the Purchase Order Conditions, which contained the Forum Selection Clause, was not attached to the e-mail.  (*See id.*)  Thigpen replied to this e-mail but did not mention anything about Ameristeel's purchase conditions.

### F. Request for Quote #6

On May 30, 2008, James Cooper ("Cooper") of Ameristeel sent an e-mail to Thigpen, asking Thigpen to submit a bid in response to RFQs for the third and fourth quarters of 2008 ("RFQ #6").  Cooper attached various spreadsheets to his e-mail, which were to be used in submitting the quotes.  Notably, the Purchase Order Conditions document was not attached to the e-mail.  Nor was there

---

[2] Neither party presented additional documentation with respect to RFQ #3, so there is no indication that Ben-Trei's bid was accepted by Ameristeel.

any mention in RFQ #6 or correspondence relating thereto regarding the Purchase Order Conditions or Forum Selection Clause. Thigpen responded to Cooper's e-mail, providing the bids as requested by Cooper. On June 18, 2008, Dickerson informed Thigpen that Ben-Trei's bids had been accepted and requested that Thigpen "confirm quantities and price by location" to ensure they were "on the same page." (6/18/08 E-mail, Ex. 5 to Pl.'s Resp. to Mot. to Dismiss.) Thigpen responded to Dickerson's e-mail with such confirmation on June 19, 2008. (*See* 6/19/08 E-mails, Ex. 5 to Pl.'s Resp. to Mot. to Dismiss.) As represented in the briefing of the parties, Ben-Trei's claims against Ameristeel relate to the alleged breach of this contract.

Thereafter, on August 21, 2008, the Ameristeel plant in Beaumont, Texas issued a Purchase Order in conjunction with the work awarded to Ben-Trei as a result of RFQ #6 ("August 21 Purchase Order"). The Purchase Order states the following: "The terms and conditions that are attached to this purchase order or which have previously been provided by Gerdau Ameristeel are made a part of this Purchase Order" ("terms and conditions language"). (8/21/08 Purchase Order, Ex. 4 to Mot. to Dismiss.) The record does not reflect that any "terms and conditions" were attached to the Purchase Order.[3]

## II. Rule 12(b)(3) Standard

In the Tenth Circuit, motions to dismiss based on a forum selection clause are analyzed as motions to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See*

---

[3] Ameristeel has not attested to the accuracy of the exhibits cited in support of its Motion to Dismiss. Specifically, Ameristeel has not provided an Affidavit stating that the exhibits attached to its briefing were in fact the documents sent to Ben-Trei in the relevant e-mails. However, because Ben-Trei does not contest that it received the various RFQs and attachments as presented by Ameristeel, the Court will assume for the purposes of this motion that Ameristeel's exhibits accurately reflect the documents and e-mails sent to Ben-Trei.

*K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 497 (10th Cir. 2002); *Riley v. Kingley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992); *see generally* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2004) [hereinafter Federal Practice] (explaining circuit split as to whether motions to dismiss based on a forum selection clause are governed by Rule 12(b)(3) or (6)). With respect to the burden of proof applicable to a Rule 12(b)(3) motion, the Tenth Circuit appears to follow the majority rule that a plaintiff bears the burden of proving proper venue, just as a plaintiff bears the burden of proving personal jurisdiction. *See Pierce v. Shorty Small's of Branson*, 137 F.3d 1190, 1192 (10th Cir. 1998) (affirming district court's dismissal for improper venue where defendant controverted facts in plaintiff's complaint regarding venue, and plaintiff failed to come forward with any contrary evidence); *see also* 5B Federal Practice § 1352 (explaining that, although there is circuit split as to which party bears the burden of proof, the better view is that the plaintiff bears the burden because "it is the plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue") (citing *Pierce*, 137 F.3d 1190)).

In order to meet his burden at the motion to dismiss stage, a plaintiff must "present only a prima facie showing of venue." *Home Ins. Co. v. Thomas Indus. Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (cited with approval in *Pierce*, 137 F.3d at 1192)); *M.K.C. Equip. Co. v. M.A.I.L. Code, Inc.*, 843 F. Supp. 679, 682 (D. Kan. 1994). In assessing whether a plaintiff has met his burden, the facts alleged in a plaintiff's complaint are taken as true, but only to the extent they are uncontroverted by the defendant's evidence. *Pierce*, 137 F.3d at 1192; *Meyers v. Keycorp*, No. CIV-07-1166-D, 2008 WL 2557991, at * 3 (W.D. Okla. 2008) ("When a defendant moves for dismissal and presents facts to establish improper venue, the plaintiff must present evidence that controverts

the facts shown by the defendant, or dismissal is proper.") (unpublished).  If the parties do present conflicting evidence, "the court is inclined to give greater weight to the plaintiff's version of jurisdictional facts and to construe such facts in the light most favorable to the plaintiff."  *Home Ins. Co.*, 896 F.2d at 1355; *M.K.C. Equip. Co.*, 843 F. Supp. at 683 (explaining that "all factual disputes should be resolved in favor of plaintiff"); 5B Federal Practice § 1352 (same).  The Court's consideration of evidence outside the pleadings does not convert the Rule 12(b)(3) motion to one for summary judgment.  *See Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) ("Under Rule 12(b)(3), the district court was not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment."); *Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1176 (D. Kan. 1999) ("The court has found nothing in the Federal Rules of Civil Procedure that makes Rule 56 applicable to motions filed under Rule 12(b)(2) and (3) when matters outside of the pleadings are presented."); 5B Federal Practice § 1352 (same).

**III.    Motion to Dismiss**

The issue presented to the Court is whether the parties' contract for the sale of goods for the third and fourth quarters of 2008 – *i.e.,* the contract formed in response to RFQ #6 ("the Contract") – includes the Forum Selection Clause and therefore mandates that Ben-Trei's claims against Ameristeel be transferred to Hillsborough County, Florida.  The parties agree that the Contract does not explicitly include the Forum Selection Clause.  However, they disagree as to whether the Forum Selection Clause is implicitly included in the Contract – either through (a) the parties' prior course of dealing or (b) as an "additional term" under OUCC § 2-207.

7

### A. Applicable Law

In determining whether a forum selection clause is part of an agreement, a federal court exercising diversity jurisdiction applies state contract law, rather than federal law. *See Black & Veatch Constr'n, Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 577 (D. Kan. 2000).[4] As to the question of *which* state's laws to apply, the parties have both looked to Oklahoma's adoption of the Uniform Commercial Code ("UCC"). Although Ameristeel notes that the Purchase Order Conditions contain a Florida choice of law provision, it appears to acquiesce to application of Oklahoma law given that Florida's versions of the applicable UCC provisions are identical to the Oklahoma counterparts. (*See* Reply in Support of Mot. to Dismiss n.1.) Accordingly, the Court will apply the UCC as adopted and interpreted in Oklahoma.

### B. Parties' Arguments

Ben-Trei contends that the Contract fails to contain the Forum Selection Clause, citing to the e-mail correspondence between Thigpen, Dickerson, and Cooper, wherein the parties negotiated and agreed upon the price, quantity, product, delivery, and term of the agreement without reference to the Forum Selection Clause or Purchase Order Conditions. Ben-Trei further maintains that the terms and conditions language in the August 21 Purchase Order does nothing to change this conclusion because: (1) the August 21 Purchase Order was issued after the formation of the Contract; (2) the terms and conditions language therefore constitutes an "additional term," as that phrase is used in § 2-207 of the Oklahoma Uniform Commercial Code ("OUCC"); and (3) under the analysis of an

---

[4] The application and enforceability of a forum selection clause is determined under federal law. *See id.* However, the threshold question of whether the forum selection clause ever became part of the agreement – which is the issue presented in this case – is governed by state law. *See id.*

"additional term" required by OUCC § 2-207, the Forum Selection Clause never became part of the agreement because it constituted a material alteration pursuant to OUCC § 2-207(2)(b) .

Conversely, Ameristeel contends that the terms and conditions language included in the August 21 Purchase Order does not constitute an "additional term" under OUCC § 2-207 because the prior course of dealings between the parties placed Ben-Trei on notice that the Purchase Order Conditions were part of the Contract. In support of this assertion, Ameristeel cites to RFQ #1, RFQ #2, RFQ #3, RFQ #4, RFQ #5, and the correspondence relating to these RFQs as demonstrating that Ben-Trei had notice of the Purchase Order Conditions and the Forum Selection Clause contained therein. Alternatively, Ameristeel argues that even if the terms and conditions language constitutes an "additional term," such language became a part of the Contract because it did not "materially alter" the Contract under OUCC § 2-207(2)(b).

**C.   Analysis**

Ameristeel does not contest the fact that the e-mails between Thigpen, Dickerson and Cooper, sent in May and June 2008, constitute a contract for the purchase of materials during the third and fourth quarters of 2008. Indeed, as argued by Ben-Trei, these e-mails reflect an agreement as to the price, quantity, product, delivery, and term of the agreement, resulting in a valid contract between the parties. Notably absent from these e-mails is any discussion, or even mention, of Ameristeel's Purchase Order Conditions or the Forum Selection Clause. Therefore, in order for the Forum Selection Clause to be included within the initial terms of the Contract, the Court would have to imply its existence through the prior course of dealings of the parties, as urged by Ameristeel. The Forum Selection Clause could also become part of the Contract by constituting an "additional term" that was added after the Contract was executed, as outlined in OUCC § 2-207. *See Rogers*

9

*v. Dell Computer Corp.*, 138 P.3d 826 (Okla. 2005) (finding that terms of sale sent with an invoice after contract was executed constituted "additional terms" of the contract under OUCC § 2-207). The Court will address both possibilities in turn.

          1.        <u>Course of Dealing</u>

A "course of dealing" is "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Okla. Stat. tit. 12A, § 1-303(b). Further, a "course of dealing" between the parties "is relevant in ascertaining the meaning of the agreement of the parties, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement." Okla. Stat. tit. 12A, § 1-303(d).

The Court is not persuaded by Ameristeel's argument that the Forum Selection Clause was an implicit term of the Contract due to the prior course of dealing between the parties as evidenced in RFQ #1, RFQ #2, RFQ #3, RFQ #4 and RFQ #5. There is no evidence in the record that Ben-Trei sent any response with regard to RFQ # 4 or RFQ #5, negating any argument that these RFQs demonstrate a "course of dealing" between the parties. There is also no indication in the record that the Purchase Order Conditions document, containing the Forum Selection Clause, was attached to RFQ #5. Further, although Thigpen responded to RFQ #2 and RFQ #3, there is no evidence demonstrating that a contract was formed between the parties as a result of this correspondence. The Court is unwilling to find that the parties engaged in a course of dealing which involved Ben-Trei's acquiescence to Ameristeel's Purchase Order conditions merely because Thigpen responded to an e-mail that attached said conditions.

Although it does appear that Ben-Trei agreed to the Purchase Order Conditions with regard to RFQ #1, the existence of one contract between the parties that included the Purchase Order Conditions does not, standing alone, establish a course of dealings between the parties. The term "course of dealing" is defined as a "sequence" of conduct, implying the existence of more than one transaction. Okla. Stat. tit. 12A, § 1-303(b); *see also Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1385 (9th Cir. 1986) (stating that a single transaction cannot constitute a course of dealing under UCC § 1-303); *Breckenridge Creste Apts, Ltd. v. Citicorp Mortg., Inc.*, 826 F. Supp. 460, 465 (N.D. Ga. 1993) (same). Finally, Ameristeel has failed to point the Court to any authority suggesting that the various RFQs constitute a course of dealing between the parties wherein the Forum Selection Clause became part of a subsequently executed contract. For these reasons, the Court is unwilling to find that the Forum Selection Clause was a term of the Contract as initially entered into by the parties. Rather, the Forum Selection Clause is only part of the Contract if it constitutes an "additional term" under OUCC § 2-207, as included in the August 21 Purchase Order.

    2.    <u>Additional Term</u>

Section 2-207(2) of the OUCC provides that "additional terms are to be construed as proposals for addition to the contract." Between two merchants, the terms become part of the contract <u>unless</u>: "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." *Id.*[5] Ben-Trei relies on OUCC § 2-207(2)(b),

---

[5] Neither party disputes that they are "merchants" under the OUCC.

arguing that the terms and conditions language in the August 21 Purchase Order did not become part of the Contract because such language "materially altered" the Contract.[6]

This Court has previously held that a forum selection clause constitutes a "material alteration" of an agreement. *Saint Francis Home Med. Equip., L.L.C. v. Sunrise Med. HHG, Inc.*, No. 08-CV-224-TCK-PJC, 2009 WL 2461327, *9 (N.D. Okla. 2009). Such holding is in accord with Oklahoma law and the weight of authority. *See Lively v. IJAM, Inc.*, 114 P.3d 487, 493 (Okla. Civ. App. 2005) (finding that a "forum selection clause materially altered the contract" and was therefore not a part of the contract) (citing numerous cases from other jurisdictions); *Galaxy Int'l, Inc. v. White Stores, Inc.*, 88 F.R.D. 311, 321 (W.D. Pa. 1980) ("We view the addition of a choice of law term to this contract as a significant alteration, and therefore, we rule that it did not become part of the contract."). Although Ameristeel attempts to argue that the inclusion of the Forum Selection Clause does not constitute a "material alteration" because it did not result in "surprise" or "hardship" to Ben-Trei, the Court is disinclined to accept this argument in light of the contrary case law cited above. Further, Ameristeel's argument is premised upon the notion that the Forum Selection Clause did not result in "surprise" or "hardship" because of the parties' prior course of

---

[6] The terms and conditions language of the August 21 Purchase Order does not specifically mention the Purchase Order Conditions or the Forum Selection Clause. (8/21/08 Purchase Order, Ex. 4 to Mot. to Dismiss.) Ben-Trei seemingly concedes, however, that such language incorporates the Purchase Order Conditions and the Forum Selection Clause. (*See* Pl.'s Resp. to Mot. to Dismiss 7 (stating that the "reference to the forum-selection clause contained in the [August 21] Purchase Order constitutes a proposed material alternation to the contract, which Ben-Trei did not accept, and which never became part of the contract").) The Court will therefore assume, for the purposes of determining Ameristeel's Motion to Dismiss, that the terms and conditions language in the August 21 Purchase Order incorporates the Purchase Order Conditions and the Forum Selection Clause.

dealing. As outlined above, the Court finds such position misplaced. Additionally supporting the Court's conclusion is the fact that no mention was made of the Purchase Order Conditions or Forum Selection Clause in the Contract at issue. Even though said terms were attached to previous correspondence between Ben-Trei and Ameristeel, Ameristeel's failure to include said terms in the formation of the Contract could easily result in "surprise" to Ben-Trei.

If an additional term materially alters the bargain, it can still become part of the agreement if it is "expressly agreed to by the other party." *See* Okla. Stat. tit. 12A, § 2-207, cmt. 3. The Court fails to find any evidence in the record demonstrating that Ben-Trei expressly agreed to the Purchase Order Conditions and/or Forum Selection Clause after receiving the August 21 Purchase Order. Nor does Ameristeel point the Court to any such evidence. Therefore, because the Court finds that the terms and conditions language materially altered the terms of the Contract and because there is no evidence that Ben-Trei expressly agreed to such terms, the Court finds that the Purchase Order Conditions, including the Forum Selection Clause outlined therein, were not part of the Contract.

## IV.   Conclusion

The Court concludes that, under the OUCC, the Forum Selection Clause was an additional term of the Contract, rather than an implied term of the parties' original agreement. The Court further concludes that the Forum Selection Clause materially altered the bargain and was not expressly consented to by Ben-Trei. Accordingly, the Forum Selection Clause never became part of the Contract and Ameristeel's Motion to Dismiss (Doc. 23) is DENIED.

    **SO ORDERED this 10th day of February, 2010.**

 

**TERENCE KERN**
**United States District Judge**